IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| KEVIN MONTE<br>349 Barton Run Boulevard<br>Marlton, NJ 08053 | : <br> : <br> : <br> : | CIVIL ACTION |
| Plaintiff, | : <br> : | No. 1:19-CV-17083-JHR-AMD |
| v. | : <br> : | |
| 7-ELEVEN, INC.<br>3200 Hackberry Road<br>Irving, TX 75063 | : <br> : <br> : <br> : | **JURY TRIAL DEMANDED** |
| Defendant. | : <br> : | |

FIRST AMENDED CIVIL ACTION COMPLAINT

Plaintiff, by and through his undersigned counsel, hereby avers as follows:

## I. INTRODUCTION

1.      This action has been initiated by Kevin Monte (hereinafter referred to as "Plaintiff," unless indicated otherwise) for violations of the Fair Labor Standards Act ("FLSA" - 29 U.S.C. 201, *et. seq*.), the Americans with Disabilities Act, as amended ("ADA" – 42 U.S.C. §§ 12101 *et seq.*), the New Jersey Law against Discrimination, and other applicable state law(s). Plaintiff asserts herein that he was unlawfully terminated <u>and</u> not paid overtime compensation in accordance with applicable state and federal laws. As a direct consequence of Defendant's actions, Plaintiff seeks damages as set forth herein.

## II. JURISDICTION AND VENUE

2.      This Court, in accordance with 28 U.S.C. § 1331, has jurisdiction over Plaintiff's claims because they arise under a federal law - the FLSA. There *would independently* be jurisdiction of this Court under 28 U.S.C. § 1332 because there is complete diversity of Parties. In particular, Plaintiff is a citizen of New Jersey and Defendant is headquartered in Texas and

not incorporated in New Jersey (making it a non-citizen of New Jersey). And Plaintiff is entitled to and seeking in excess of $75,000.00, exclusive of costs and interest.

3.      This Court may properly maintain personal jurisdiction over Defendant because Defendant's contacts with this State and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

4.      Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

5.      Plaintiff is proceeding herein under the ADA after properly exhausting his administrative remedies by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and by filing the instant lawsuit within ninety ("90") days of receiving a notice of dismissal and/or right to sue letter from the EEOC.

### III.  PARTIES

6.      The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7.      Plaintiff is an adult individual, with an address as set forth in the caption.

8.      7-Eleven Inc. (hereinafter "Defendant") is a publicly-traded corporation overseeing or operating thousands of convenience stores internationally.

9.      At all times relevant herein, Defendant acted by and through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

## IV.  FACTUAL BACKGROUND

10.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

11.     Plaintiff was hired by Defendant in or about early October of 2018. In total, Plaintiff was employed with Defendant for approximately 9 months in total until being terminated (discussed *infra*).

12.     Plaintiff was hired as a "Field Consultant Trainee" with the expectation that he would be trained in (and become) a Field Consultant.

13.     From in or about early October of 2018 through late December of 2018, Plaintiff was physically assigned to Defendant's Mt. Laurel, New Jersey location. This was generally a training facility where Plaintiff trained.

14.     After an approximate 4-month period of training, on or about January 1, 2019, Plaintiff was assigned to *a corporate-owned* convenience store of Defendant in Pitman, New Jersey (hereinafter "the Pitman location").

15.     Once at the Pitman location, Plaintiff was still referred to as a Field Consultant and he reported to Greg Campanella ("Campanella"). Campanella was a "Trainer" for Defendant who functioned as Plaintiff's direct manager.

16.     In or about February of 2019, Matthew Tomlinson ("Tomlinson") became Plaintiff's Regional Manager. He had upon information and belief been a relatively inexperienced manager for Defendant who transferred from Western Pennsylvania. In particular, Tomlinson had previously worked as a non-supervisory capacity and as a merchandiser for Defendant until late 2018.

## [A] **Plaintiff was unlawfully not paid overtime compensation**

17.     Understanding Defendant's business model and operations in general is important to understanding why Defendant appears to systematically violate state and federal overtime laws (albeit this is an individual action, not a class or collective-action).

18.     Defendant has more than 60,000 locations in more than 15 Countries, including throughout the United States. It is one of the world's largest franchise companies. And most of Defendant's locations are licensed to franchisees, *while thousands do remain corporate-owned.*

19.     Plaintiff was not employed through a franchise, but rather, through Defendant as a corporate entity. The goal of Defendant is to often use people like Plaintiff to go from location to location to get the store looking clean, presentable, sanitary, and to cut costs, maximize profits, and then to quickly license the store to a franchisee who will buy / acquire the store generating more passive revenue for Defendant. While working for Defendant, Plaintiff was in training to become this management employee who would ultimately manage stores in the above manner.

20.     Defendant's business model however is to exploit people it trains and hires at all levels, *often elevating them with little experience or minimal training*. It does so to pay them cheaper, to operate with a skeleton crew, and to quickly transition locations to franchisees regardless of whether it has high turnover of its own corporate employees (or the employee exploited).

21.     Normally, employees hired as Field Consultants such as Plaintiff are trained for up to a year. But Plaintiff was fast-tracked and trained only for approximately 4 months because – as represented to him – he had the qualities and demonstrated ability to succeed on an expedited basis.

22.     Once placed at the Pitman location, Plaintiff was in essence *in training* to be a manager (but still called a Field Consultant).  In this continued training capacity, Plaintiff was paid at a salary of $75,000.00 per annum.

23.     Beginning in January of 2019 and in conjunction with his placement at the Pitman location, Plaintiff often worked 7 days per week and he averaged 60-90 hours per week of work. Plaintiff was *never once* paid for overtime worked beyond 40 hours per week.

24.     Plaintiff was however at all times relevant to his work at the Pitman location a non-exempt employee. He could not possibly meet any exemption, let alone the "executive exemption" of state or federal law. Even though he was paid by salary, his "primary duties" **were not** management (even if that was the ultimate goal when he was fully trained).

25.     Plaintiff estimates herein and asserts that *at least* 80-85% of his weekly work was that of a laborer and that he only spent 1% - 19% of his job per week performing any work that could be even arguably construed as management.  By way of specificity:

(1) Defendant was exclusively motivated to make its stores look extremely profitable, having very low overhead, and operating *with exceedingly minimal employee compensation*.  Thus, Defendant solely sought to create the outward projection of extreme profitability, cleanliness, and store presentation regardless of whether it could be operated properly to make it easier to sell or be acquired by a licensee or franchisee.

(2) The above-referenced motivation created and perpetuated a system whereby Defendant would essentially place someone such as Plaintiff with minimal training under the guise of continued training to exploit and work tremendous hours in a salaried capacity *often 7 days per week* with little or no other staff at times just *to create the profitability appearance* with low employee overhead.

(3) In working 60-90 hours per week, Plaintiff had 5 or 6 other employees who worked in the facility (but not at the same time). Plaintiff would create a schedule, but the schedule as to permitted headcount was dictated to him by his management as only permitting him to include 1 or 2 people at most at varying times. Thus, Plaintiff did not have any meaningful discretion in creating the schedule based upon his actual store or business needs.

(4) Because Plaintiff was only permitted to schedule 1 person per shift or sometimes 2 people on a shift, Plaintiff spent nearly 80% or more of his workdays and workweeks mopping floors, cleaning windows or other areas, unloading merchandise, stocking shelves, working as a cashier, making food, taking orders, replenishing drinks, coffee or other supplies, lifting and moving equipment or supplies, answering customer inquiries, and significant other non-supervisory labor work.

(5) Plaintiff would only rush at times to count cash and make deposits when not performing non-supervisory or labor-intensive work. Plaintiff never terminated employees, did not have authority to give pay increases, and on 1 occasion when he asked if an employee (Sam Ross) could be promoted to help him and given support the request was denied. In order for Plaintiff to schedule any type of contractor to come to the store (such as power-washing the outside of the store), it had to be approved.

(6) Plaintiff did not have significant discretion, did not make operational decisions on his own, and was at all times considered a Field Consultant "in training" with a trainer overseeing all aspects of his work.

26.     In sum, even if Defendant were to claim Plaintiff was *functionally* some type of team leader, foreman, assistant manager or overall manager, Plaintiff was: (1) referred to as a Field Consultant; (2) *only in training*; (3) working under the supervision of a trainer; (4) had no meaningful discretion; (5) did not perform primary duties of management; and (6) worked 60-90 hours per week *functionally filling the role of multiple other employees who would have otherwise been used to perform labor*.[1]

---

[1] *See e.g. Morgan v. Family Dollar Stores, Inc*., 551 F.3d 1233, 1269 (11th Cir. 2008)(affirming $35,000,000 verdict against the defendant because a class of store managers performed primary duties of non-management including stocking, cashier work, etc…); *Hickton v. Enter. Rent-A-Car Co.* (*In re Enter. Rent-A-Car Wage & Hour Empl. Practices Litig*.), 2012 U.S. Dist. LEXIS 136252 (W.D. Pa. 2012)(denying summary judgment and explaining a jury could readily conclude employee titled "manager" who performed mostly sales and other labor had "primary duties" other than management); *Marshall v. Coastal Group Management*, 1980 U.S. Dist. LEXIS 11704 (D.N.J. 1980)(reaffirming the denial of summary judgment as to managers explaining they spent most of their time prepping food, cooking, handling customers, working the cash register and cleaning finding assertions of the "executive exemption" to be "untenable").

27.     Plaintiff was a non-exempt employee working 60-90 hours per week from January of 2019 through his termination from employment in June of 2019.  Plaintiff is owed in excess of $15,000.00 in unpaid overtime, *plus* liquidated damages.[2]

### [B] Plaintiff was unlawfully terminated from Defendant

28.     Plaintiff had received positive feedback while working proverbially to the bone up to 7 days per week from January 2019 through May of 2019 while under the supervision of Campanella and Tomlinson.

29.     Plaintiff did not receive any discipline from January 2019 through May of 2019.

30.     Plaintiff's location wherein he was a Field Consultant was identified as very high performing, and Plaintiff in fact received several corporate awards for success related to his location in Pitman, New Jersey.

31.     The exploitation of Plaintiff though was taking a very serious toll on him.  As a result, in the timeframe of May / June 2019, Plaintiff talked with both Campanella and Tomlinson.  He specifically informed them that he suffered from an Anxiety Disorder, got medical treatment, and took medication.

---

[2] *See e.g. Solis v. Min Fang Yang*, 345 Fed. Appx. 35 (6th Cir. 2009)(Affirming award of liquidated damages explaining "under the Act, liquidated damages are compensation, not a penalty or punishment, and no special showing is necessary for the awarding of such damages. Rather, they are considered the norm and have even been referred to by this court as mandatory."); *Gayle v. Harry's Nurses Registry, Inc*., 594 Fed. Appx. 714, 718 (2d Cir. 2014)(Affirming award of liquidated damages explaining there is an automatic "presumption" of liquidated damages and "double damages are the **norm,** single damages the exception," as the burden to avoid liquidated damages is a "difficult burden."); *Haro v. City of Los Angeles*, 745 F.3d 1249 (9th Cir. 2014)(Affirming award of liquidated damages explaining they are the "norm" and "mandatory" unless the employer can establish the very "difficult burden" of subjective and objective attempts at FLSA compliance); *Chao v. Barbeque Ventures, LLC*, 547 F.3d 938, 942 (8th Cir. 2008)(Affirming award of liquidated damages explaining that the employer mistakenly argues its non-compliance was not willful, misunderstanding the high burden to show affirmative steps of attempted compliance and research of the FLSA and separately that its diligence and belief in non-payment of overtime was also objectively reasonable.); *Chao v. Hotel Oasis, Inc.,* 493 F.3d 26 (1st Cir. 2007)(Affirming award of liquidated damages explaining that they will always be considered the "norm" in FLSA cases); *Lockwood v. Prince George's County,* 2000 U.S. App. LEXIS 15302 (4th Cir. 2000)(Affirming award of liquidated damages explaining they are the "norm" and that an employer may not take an ostrich-like approach and refuse to research its obligations under the FLSA and to objectively explain why it failed to comply with the FLSA); *Uphoff v. Elegant Bath, Ltd.*, 176 F.3d 399 (7th Cir. 1999)(Reversing the district court for not awarding liquidated damages, as doubling unpaid overtime is the rule, not an exception); *Nero v. Industrial Molding Corp*., 167 F.3d 921 (5th Cir. 1999)(Affirming award of liquidated damages, as there is a presumption of entitlement to liquidated damages which are the norm).

32.     The purpose in Plaintiff informing this management of his health and treatment was twofold: (1) Plaintiff believed that he would not be discriminated against in light of his demonstrated accomplishments and work ethic; and (2) to request a medical accommodation discussed below.

33.     Plaintiff explained to Campanella and Tomlinson that he was working up to 7 days per week, working with barebones staff performing every task in the store, and that his anxiety disorder was being significantly exacerbated.  Plaintiff asked them to consider giving the store some more support, helping with better training, and hopefully lessening Plaintiff's work hours all to alleviate his health complications.

34.     Following Plaintiff's health-related discussion above, he was demeaned, subjected to significant animosity, referred to as not a good fit, and then terminated within less than 2 months for supposedly having inventory shortages.

35.     The rationale of alleged inventory shortages was a complete pretext as: (1) it was not reasonably attributable to Plaintiff; (2) Plaintiff was only in training; (3) Campanella had previously joked about how he regularly took food or other items from shelves at will in front of Tomlinson who did not care that Campanella did so; and (4) many locations of Defendant have varying inventory shortages (including before Plaintiff even worked there) where individuals are not terminated for same.

36.     Plaintiff was terminated because of his health conditions and/or because he was perceived to show weakness by requesting accommodations in his workload. These actions constitute unlawful discrimination and retaliation.

**Count I**
**Violations of the Fair Labor Standards Act ("FLSA")**
**(Failure to Pay Overtime Compensation)**

37.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

38.     Plaintiff was not properly paid for all owed overtime as explained *supra*.  And such actions constitute violations of the Fair Labor Standards Act ("FLSA").

**Count II**
**Violations of the New Jersey Wage and Hour Law**
**(Failure to Pay Overtime Compensation)**

39.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

40.     Plaintiff was not properly paid for all owed overtime as explained s*upra*. And such actions constitute violations of the New Jersey Wage and Hour Law.

**Count III**
**Violations of the New Jersey Law against Discrimination ("NJ LAD")**
**([1] Discrimination; and [2] Retaliation)**

41.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

42.     Plaintiff was terminated because of his perceived, actual or record-of health-related conditions and/or disclosures.

43.     Plaintiff was terminated because of his requested medical accommodations, as explained *supra*.

44.     These actions of discrimination and retaliation as aforesaid constitute violations of the NJ LAD.

**Count IV**
**Violations of the Americans with Disabilities Act, as amended ("ADA")**
**([1] Actual/Perceived/Record of Disabilities Discrimination; [2] Retaliation; [3] Hostile Work Environment)**

45.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

46.     Plaintiff reasserts each and every allegation from Count III of this Complaint, as such actions constitute identical violations of the ADA.

47.     Therefore, Plaintiff believes and avers he was subjected to a hostile work environment and ultimately terminated from Defendant because of: (1) his known and/or perceived health condition; (2) his record of impairment; and/or (3) in retaliation for requesting and/or utilizing reasonable medical accommodations.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A.     Defendant is to promulgate and adhere to a policy prohibiting overtime and wage violations, as well as discrimination and retaliation;

B.     Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's wrongful actions, including but not limited to all owed wages, overtime, past and future lost earnings, benefits, pension or other employee perks, and other applicable compensation;

C.     Plaintiff is to be awarded actual damages to which he is equitably or legally entitled beyond those already specified herein;

D.     Plaintiff is to be awarded liquidated and punitive damages as permitted by applicable laws;

10

E.      Plaintiff is to be accorded other equitable relief as the Court deems just, proper, and appropriate;

F.      Plaintiff is to be awarded the costs and expenses of this action and a reasonable attorney's fees if permitted by applicable law; and

G.      Plaintiff is permitted to have a trial by jury.


                                        Respectfully submitted,

                                        **KARPF, KARPF & CERUTTI, P.C.**

                                        */s/ Andrew R. Olcese*
                                        Timothy S. Seiler, Esq.
                                        Andrew R. Olcese, Esq.
                                        3331 Street Road
                                        Building 2, Suite 128
                                        Bensalem, PA 19020
                                        (215) 639-0801

Dated: October 23, 2019